G. A. WASHINGTON et al., v. JOHN T. RYAN et al.

DEED OF ASSIGNMENT TO SECURE CREDITORS. *Allegation of fraud. Bur-den of proof.* Where there was no evidence in the record to show that, the deed of the debtor was made to hinder or delay his creditors, or of any fraudulent purpose to secure the benefit to himself; upon an allegation of fraud as to the indebtedness to the grantor's wife pro-vided for by the deed, and an explicit denial of such allegation by the answer of the wife, there being no evidence to impeach such debt of the wife; *held,* that the burden of proving the fictitious and fraudu-lent character of such debt is upon the complainants.

SAME. *Presumption of acceptance.* The complainants not alleging that the beneficiaries in the deed had not accepted, or had renounced, its provisions in their favor, and there being no evidence upon the sub-ject of acceptance or renunciation, except that raised by the presump-tion that the beneficiaries accepted the provisions for their benefit; *held,* that the presumption of law is that they did accept; and that fact presumed and uncontradicted, is sufficiently proved.

SAME. *Same. Evidence rebutting.* The filing of a bill by an outside creditor, attaching the conveyed property, by which it is sought to de-prive the trust deed creditors of all the security they have for their debts, does not furnish any evidence rebutting the presumption of ac-ceptance.

The authorities reviewed and discussed at length.

FROM ROBERTSON.

Appeal from Chancery Court. CHAS. G. SMITH, Ch.

J. E. & A. E. GARNER for plaintiff.

STARK & JUDD and SCOTT for defendant.

DEADERICK, Ch. J., delivered the opinion of the court.

On the 16th of July, 1870, defendant John T. Ryan executed to his co-defendant, G. H. Whitehead, a deed of trust, conveying certain mules, horses, cattle, hogs, and corn and tobacco then growing, and on the next night left the State. He also included in said trust deed his interest in two tracts of land in Robertson county, which he held by title bond, having paid part only of the purchase money. This deed of trust was proved on the same day, it was executed and duly registered.

On the 21st July, 1870, defendant Langford executed a deed of trust to Thos. H. Gardner, trustee, for certain personal property and one-half of his tract of two hundred acres of land. This deed was proved 21st July, 1870, and duly registered. Ryan and Langford, the makers of said deeds of trust were partners in trade under the firm name and style of John T. Ryan & Co., and the deeds were made to secure certain firm and individual creditors named in said deeds.

On the 22d of July, 1870, complainant Washington filed his attachment in the Chancery Court of Robertson county against Ryan and Langford, their trustees in said deeds, and their vendors of the land conveyed in said deeds, alleging that the said deeds were fraudulent and void, and made to hinder and delay their

creditors, and seeking to set aside said deeds and have the property therein conveyed, subjected to the payment of certain debts due him, evidences of which he exhibited with his bill.

Upon the same day, to wit, 22d July, 1870, Geo. B. Polk, as a creditor of said Ryan, filed his bill in said county against him and Whitehead, the trustee in his deed, and James K. Polk and Thos. H. Gardner, vendors of the lands conveyed in said trust deed, making similar allegations of fraud and prayers for relief similar to that in the bill of Washington. Subsequently, similar bills were filed by W. M. Evans, Wm. Anderson, C. I. Davis, and Geo. F. Adams and Son, and Sugg Fort, on his petition, was admitted as a co-complainant with Washington in his bill.

To these bills, the trustee and the vendors of the land conveyed, Mrs. Martha Ryan, and the guardian *ad litem* of Langford's heirs (he having died after said bills were filed), answered, denying the frauds alleged, and judgments *pro confesso* were taken against Ryan.

These cases, six in number, were consolidated and heard together. The Chancellor decreed that the deed made by said Ryan was not fraudulent and void, and that the several debts therein secured, except the debt of $5,000 to Mrs. Ryan, mother of said John T., were valid debts, and were entitled to satisfaction out of the trust property in the order named in said deed, after first paying the balances due the vendors for the land. Nearly all of the personal property conveyed in said trust deed had been taken on executions which

were prior liens, subsisting at the time of the execution of the trust deed, and sold by the sheriff.

The deed of Langford was declared to be fraudulent and void, and was set aside.

From so much of the decree as refused complainants the relief they sought against the deed of Ryan they have appealed, and Mrs. Ryan having been made a party defendant to said-bills, has appealed from so much of the decree as disallowed her debt of $5,000.

No other parties to said causes have appealed, and we are therefore relieved from any investigation of any of the matters involved between the complainants and those claiming benefits under the deed of Langford. There is no evidence in the record to show that the deed of Ryan was made to hinder or delay his creditors, nor of any fraudulent purpose to secure a benefit to himself. He seems to have been hopelessly insolvent, and on the next night after making his deed of trust he left the State, and as far as appears from the record, never returned. An effort was made to show that he had taken off one of the six mules conveyed in the trust deed, but we are not satisfied that the evidence establishes the charge.

It is certain it utterly fails to show that it was done, if done at all, with the consent or knowledge of the trustee or any of the beneficiaries in the trust deed.

It has been earnestly and elaborately argued that the deed is fraudulent in admitting an indebtedness to Mrs. Ryan of $5,000, and this is expressly charged in the bill as a fictitious and unfounded claim. Mrs.

Ryan was allowed to become a party defendant, and filed her answer explicitly denying the charges in the bill that her debt is fictitious and fraudulent, and exhibits with her answer the note of said John T. executed to her and dated 30th May, 1870, and states that it was given for money loaned and property sold. It is insisted that it is incumbent upon her to prove the consideration of the note as alleged by her; that upon the note being impeached for fraud, she is bound to prove it was not fraudulent. We do not so understand the law. The complainants have alleged the fraud, and the burden is upon them to prove it. The case in 1 Hum., 335, cited as sustaining that position, is very different from the present case. There the father was indebted, and stated upon making a conveyance to a third person, who was to convey to his son that his object was to avoid the payment of some old debts. And upon a subsequent conveyance to his son, recited various money considerations, or debts paid or assumed; and this court held upon a bill filed to set aside the deed for fraud, that it was warranted in concluding the considerations recited in the deed were not in fact paid. And if they were, "circumstanced as the case is," the defendants should have proved the payments.

There is no evidence whatever to impeach the validity of Mrs. Ryan's debt, and without it we cannot say that it is fictitious and fraudulent. The burden of proving it so, is upon complainants. If it is so in fact, some circumstances to warrant such conclusion could have been adduced. Complainants further in-

sist, that having filed their attachment bills before any of the beneficiaries in the trust deed had formally accepted its provisions, they are entitled to priority of satisfaction out of the property conveyed. And in support of this proposition they rely upon the cases of *Brown* v. *Vanleer*, 7 Hum.; *Green* v. *Demoss*, 10 Hum.; *Mills* v. *Haines*, 3 Head; and the unreported case of *Dews* v. *Olwill*, 3 Bax., 432, decided at the December term, 1874, of this court.

None of the bills filed allege that the beneficiaries in the trust deed had not accepted, or had renounced its provisions in their favor; and none of the answers aver an acceptance of its provisions, except the answer of Mrs. Ryan. And there is no evidence upon the subject of acceptance or renunciation, except that raised by the presumption that the beneficiaries accepted provisions made for their benefit.

In the case of *Brown* v. *Vanleer et al.*, the complainant had sold and conveyed several tracts of land to defendant Vanleer, and the vendee had conveyed the land to a trustee to secure certain of his creditors, and the question presented and determined in the case was, whether the lien of the vendor, for unpaid purchase money, should prevail over the lien created by the voluntary conveyance of the vendee to a trustee to secure pre-existing debts, where the vendor of the land had taken the first steps to enforce his equity.

In the opinion of the court, it is expressly decided that the lien of the vendor of land for unpaid purchase money, may be enforced against the trustee and

beneficiaries in a trust deed to secure pre-existing debts, when the bill is filed for that purpose before the trust is executed.

In the argument of Mr. Cooper, adopted as the argument of the court, it is very manifest that the vendor's lien was allowed to prevail over the lien of the beneficiaries in the trust deed, because it was a subsisting lien upon, or equity in the land conveyed at the time of the conveyance in trust, and because the beneficiaries were neither judgment creditors nor purchasers for value without notice. And in order that the vendor's lien might be postponed to the lien of the creditors, it was essential that steps be taken in a legal form towards closing the trust, or that the trustee under the powers conferred by the deed should have executed the trust.

The case of *Green* v. *Demoss* is also a bill filed to enforce the vendor's lien. Two of the notes had been assigned by Green the vendor, and one, not due when the bill was filed, was retained by him, and he and his assignees united in the bill, to set aside a deed of trust to secure his creditors, made by the vendee, and have the land sold to pay the purchase money. The relief was refused to the assignees upon the ground that the assignment of notes for the purchase money of land, which had been conveyed by deed of the vendor, by virtue of the assignment, there must be some affirmative act clearly expressive of their assent to, and intention to take a benefit under the assignment; that the mere legal presumption of acceptance, because of their benefits, is not sufficient.

We do not concur in this interpretation of the meaning of the language employed in the opinion of the court in the case of *Brown* v. *Vanleer.* We do not think the court meant to be understood as using the word "executed" in reference to the trust as synonymous with the word "accepted" by the creditors. Indeed, the argument referred to by the court makes no mention of the question of acceptance, and excludes such a conclusion. The opinion of the court is equally reticent upon that point.

As against the lien of the vendor, the execution of the trust deed by the trustee, or the institution of proceedings for that purpose, and the two modes indicated, in one of which the creditors might, if no step is previously taken by the vendor, make good the provision of the trust deed in their favor. And it is nowhere intimated in that case that any formal acceptance, by the creditors, was necessary to perfect their rights as lien creditors.

The case in 3 Head, 332, is one in which complainants who were creditors filed their bill against defendants to set aside a deed of trust previously made to secure other creditors upon the ground of fraud. The court held there was no evidence of fraud, but upon the authority of the case of *Green* v. *Demoss,* in the absence of evidence of acceptance by the creditors secured in the trust deed, of the provisions thereof for their benefit, held that as between the beneficiaries in the trust deed and other lien creditors, the mere legal presumption of acceptance will not suffice to give such beneficiaries a lien; and gave

complainants relief upon this ground. It was also held that if the execution of the deed was unknown to the creditors, the maker might revoke it, or creditors attach the property. It does not appear in this last cited case whether the deed had been registered before the filing of the bill. In the MS. opinion referred to, of *Dews* v. *Olwill,* it appears that the party claiming under the trust deed, made no appearance until about two years after the creditors had attached the property; and did not then aver her acceptance of the benefits of the trust in her answer upon being made a defendant.

Upon the rights of the parties in such cases, Judge Freeman, who delivered the opinion, said: "Upon this question our cases are somewhat in conflict." He then refers to the cases in 3 Head, 335, and 10 Hum., 371, as sustaining the complainant's right, etc., 4 Cold., 626, and other authorities as sustaining the right of the beneficiaries. He then says: "In the present case, however, it is not averred that the benefit of the assignment was ever accepted at all by Mrs. Doyle, or in fact known to her before the filing of her answer, which was not until nearly two years after the filing of the bill of complainants and the levy of their attachment. In such cases, we hold that the right of the attaching party is superior, but express no opinion beyond this, confining our opinion to this precise state of facts."

It will be observed that the 7 Hum. case furnishes no authority for the construction given it in the case of *Green* v. *Demoss,* 10 Hum.; and that the case in

3 Head, 332, where the bill was filed thirteen days after the deed was made, was founded chiefly upon the dicta contained in the case of *Green* v. *Demoss;* while the MS. case of *Dews* v. *Olwill,* refers to the conflicting decisions by our court, and does not distinctly adopt those of the one line or the other, but expressly limits the decision to the case decided. And in effect, holds that such long delay, as two years, in claiming under the trust deed, is either evidence that it was abandoned, or that such delay raised a counter presumption that its provisions never were accepted. On the other hand, from a very early period in our judicial history, this court has repeatedly held that "a deed of trust being always made for the benefit of the *cestui que trust,*" his acceptance or assent thereto " will always be presumed in the absence of proof to the contrary." 3 Yerg., 257; 3 Hum., 442; 1 Head, 206; 4 Cold., 626; 2 Heis., 418, 419.

In the case in 2 Heis. of *Farquharson* v. *McDonald,* the deed was executed, and proved and registered 16th July, 1865, and complainant filed his attachment bill 16th August, 1865, as a creditor, seeking to set aside the deed for fraud, and to have the property conveyed in the trust deed subjected to the payment of his debts, numerous other creditors filed bills subsequently of the same character and for the same objects.

Nicholson, Ch. J., delivering the opinion of the court, said : " Holding, as we do, that the deed executed by McDonald on the 15th of July, 1865, was valid and unaffected by fraud, either in law or in

fact, it follows that the legal title to the property conveyed, passed, upon the registration of the deed to Perkins (the trustee), for himself and for such other creditors of McDonald as might elect within the time prescribed to accept its benefits. Upon the registration of the deed, McDonald was divested of the legal title, and the law presumes that the benefits designed for the beneficiaries will be accepted by them, and the title vests in the trustee, irrevocable, by the grantor, to await the election of the beneficiaries." Citing 3 Yerg., 257; 3 Hum., 446; 1 Head, 186; Burrill on Assignments, 351; 4 Cold., 630. The learned judge continues: " But while it is true that all the beneficiaries under a trust deed are presumed to accept its benefits, it is equally true that they may repudiate and reject the deed. And any distinct and unequivocal act of renunciation and repudiation of the benefits of the deed, by any of the creditors intended to be benefitted, will operate as an estoppel against further claims under the deed."

McDonald's deed specified creditors of the first and second class who were preferred, and then provided for the payment *pro rata* of all his other creditors, or such of them as presented their claims by the 1st January, 1867, and this provision was held valid. In 2 Story's Eq., sec. 1036*a*, it is said that in a general assignment for the benefit of creditors, they need not be technical parties to it. If there be no stipulation in the deed for a release, or if there be no other condition in it which may not be for their benefit, their assent will be presumed until the contrary ap-

pears. Such a *bona fide* assignment made by the debtors and assented to by the assignee, will be deemed a valid conveyance, founded upon a valuable consideration and good against creditors proceeding adversely to it by attachment or execution, unless the deed is repudiated by the creditors.

In the same section it is laid down that where a time is fixed within which the creditors may take the benefits of the deed, by notice to the trustee, they must give it or be excluded. If no time is fixed then within a reasonable time, they should signify their assent. In 3 Head, 336, it is said in general the acceptance of the trust by the creditors may be presumed where the contrary does not appear. But this presumption alone will not suffice in a contest as to priority of liens between the beneficiaries in the deed and other lien creditors. Citing 10 Hum., 371, 376, a case of a bill filed by a vendor of land to enforce his lien, against creditors holding the land by lien to secure a pre-existing debt. But what lien have the attaching creditors in this case? How do they acquire it? They had none by judgment or otherwise before their bills were filed, attaching land to which their debtor had no title, legal or equitable, having conveyed all his title therein by deed duly registered to secure other creditors before their bills were filed. The case in 2 Heis. before cited is very analogous to the present one, and we think decisive of it. But not only is the weight of authority in favor of the proposition, that in this case the presumption of acceptance of the provisions of the deed of trust is suffi-

cient to protect the rights of the beneficiaries therein against the attaching creditors, but their right is also well sustained by sound reason.

It is admitted in all the cases that the presumption does arise. Now what is the effect and force of this presumption, and how only can it be rationally displaced, removed, or surmounted? A presumption is *prima facie* proof of the fact presumed, and unless the fact thus established, *prima facie*, by the legal presumption of its truth is disproved, it must stand as proved. " If no opposing evidence is offered the jury are bound to find in favor of the presumption." 1 Green Ev., sec. 33. A contrary verdict would be liable to be set aside as being against evidence. *Ibid.*

Now suppose the deed of trust made and registered; does not the law say that the beneficiaries, *prima facie,* have accepted its provisions in their favor? There is no controversy upon the proposition. Why does the presumption arise? Because the deed is for the benefit of the creditors. Then the presumption stands as proof of the fact of acceptance until it is rebutted by evidence. But how does the filing of a bill by an outside creditor attaching the conveyed property by which it is sought to deprive the trust deed creditors of all the security they have for their debts, furnish any evidence rebutting the presumption of acceptance? It cannot be pretended that it does furnish any such evidence. How, then, can the presumption, standing as a proved fact, in the case, be overcome without some counter-railing evidence? Suppose it were proved by the testimony of witnesses that the beneficiaries ac-

cepted the deed's provision in their favor, or that the creditors had signed the deed in attestation of the acceptance, would not the attaching creditors be repelled? The presumption of law is that they did accept, and that fact presumed and uncontradicted is sufficiently proved. It is not a satisfactory answer to say, as between lien creditors, the presumption is not sufficient.

The attaching creditor might have any surplus after paying the secured debts, but he acquires no lien upon the land conveyed *bona fide* by his debtor by registered deed for the security of other creditors. He can reach by his attachment only such equity as his debtor has in the land—no more.

The result is that the Chancellor's decree will be affirmed except as to Mrs. Ryan's claim, and as to that, it will be reversed, and the cause remanded for the purpose of having the trust executed in conformity to this opinion, and complainants will pay the costs of this court, and the costs below will be paid as may be adjudged by the Chancellor.

McFARLAND, J., dissented as follows:

I agree fully in the conclusion, but from so much of the reasoning and comments upon the cases of *Brown* v. *Vanleer,* and *Green* v. *Demoss,* as seems to imply that a vendor who has made a deed having only an implied vendor's lien, has a lien superior to the claim of a creditor, who, before any steps have been taken by the vendor, has actually accepted the benefits of a deed of trust upon the land to secure his debt.